UNITED STATES of America, Plaintiff-Appellee,

v.

Donald JAMES and David Anthony Butler, Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

Henry SMITH and Kenneth Wayne Whitmore, Defendants-Appellants.

Nos. 77–5188, 77–5271.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1979.

Before BROWN, Chief Judge, COLE-MAN, GOLDBERG, AINSWORTH, GOD-BOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, and VANCE, Circuit Judges.*

CHARLES CLARK, Circuit Judge:

The court en banc on its own motion has reconsidered this case following the panel decision reported at 576 F.2d 1121 because of possible conflicts between that decision and prior decisions of this court touching on the admission of out-of-court statements by alleged coconspirators and because of the importance of the question at issue.

The panel opinion fully stated the facts and circumstances of the case and the conclusion of the court with respect to all matters at issue through that part of the opinion denominated "IV. Miscellaneous," 576 F.2d 1123–27, second line. The court en banc, therefore, approves and adopts those parts of the panel opinion for the purpose of dealing with the matters discussed. The remainder of the panel opinion denominated "V. Coconspirator Statements" is withdrawn and the following is substituted in its place:

· Frank J. Petrella, Atlanta, Ga., for David Anthony Butler and Donald James.

P. Bruce Kirwan, Federal Public Defender, John R. Martin, Asst. Federal Public Defender, Atlanta, Ga. (Court-appointed), for Smith.

Murray M. Silver, Atlanta Ga., for Whitmore.

William L. Harper, U. S. Atty., William L. McCulley, Atlanta, Ga., Ann T. Wallace, Joseph S. Davies, Jr., Katherin Winfree, Attys., Dept. of Justice, Appellate Section, Criminal Div., Washington, D. C., for plaintiff-appellee.

## V. Coconspirator Statements

Under a long-recognized exception to the hearsay rule, a statement made by one member of a conspiracy during the course of and in furtherance of the conspiracy may be used against other members of the conspiracy if certain conditions are met. Meeting these conditions is necessary because of the court's recognition of the danger of prejudice to the defendant which would result if the jury were to rely upon coconspirator statements without first addressing and deciding the admissibility question.

### (A) Judge or Jury?

Present practice calls for the judge and the jury to share the responsibility for de-

* Judge Tuttle was a member of the panel, the author of the panel opinion, and, as a member of the en banc court as he was qualified to be, 28 U.S.C.A. § 46(c), participated in the oral argument of the case en banc and the en banc conference. Subsequently, the Omnibus Judgeship Bill, Public Law No. 95–486 (95th Congress) was approved October 20, 1978. In view of this, Judge Tuttle elected not to participate further in this decision. Judge Thornberry, also a member of the en banc court, took senior status after the oral argument and en banc conference. He, too, elected not to participate further in this decision.

termining whether these conditions have been met. In *United States v. Apollo,* 476 F.2d 156 (5th Cir. 1973), we held that the judge's role is to make a preliminary determination whether the government has presented sufficient evidence, independent of the hearsay itself, to support a finding by the jury that the alleged conspiracy existed and that the declarant and the defendant against whom the statement is offered were members of that conspiracy. This is the "prima facie case" standard enunciated in *United States v. Oliva,* 497 F.2d 130 (5th Cir. 1974), and followed in subsequent decisions, *see, e. g., United States v. Rodriguez,* 509 F.2d 1342 (5th Cir. 1976); *United States v. Tyler,* 505 F.2d 1329 (5th Cir. 1975). If the judge is satisfied that this test has been met, then under existing law the jury is instructed, both when the hearsay is introduced and at the final charge, that it may consider the hearsay against a particular defendant only if it first finds that the conspiracy existed, that the declarant and the defendant were members of it, and that the statement was made during the course of and in furtherance of the conspiracy. *See, e. g., United States v. Lawson,* 523 F.2d 804, 806 (5th Cir. 1976); *United States v. Fontenot,* 483 F.2d 315, 324–25 (5th Cir. 1973); *Myers v. United States,* 377 F.2d 412, 417–19 (5th Cir. 1967).

This case presents the first opportunity for us to consider the effect of the Federal Rules of Evidence upon our present practice.[1] Here, the appellants moved for a pretrial hearing outside the presence of the jury in order to permit the trial judge to determine the admissibility of coconspirator statements. In support of their motion, they argued that Rule 104(a) of the Federal Rules of Evidence allocated to the judge alone the responsibility for deciding the admissibility of such statements and that the complexity of their case called for this to be accomplished at a separate nonjury hearing, as permitted under Rule 104(c). The district court denied the motion, asserting the cautionary *Apollo* instructions would adequately protect the defendants. Faced with this denial of their motion, the defendants requested and received *Apollo* instructions at trial. They now ask us to reverse their convictions on the basis of the denial of their motion. We believe this is an appropriate opportunity to overrule *Apollo* and to establish a new standard and procedure for handling the admissibility of coconspirator statements in criminal conspiracy trials.

■ Under the Federal Rules of Evidence, which became effective July 1, 1975, a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R.Evid. 801(d)(2)(E). While this definitional section of the Rules removes coconspirator statements from the realm of hearsay, admissibility still depends upon the proof of the same facts as required previously. Thus, there must be a conspiracy, the statement must be made during the course of and in furtherance of the conspiracy, and the declarant and the defendant must be members of the conspiracy.[2] However, Rule 801 provides no guidance on whether the judge or the jury is to decide that these conditions have been satisfied.

■ To resolve that question, we must look to Rule 104, which delineates the functions of judge and jury in the determination

---

1. We expressly reserved the decision on this issue in two recent cases because the issue had not been raised in the district court, *United States v. Hansen,* 569 F.2d 406, 401 n.1 (5th Cir. 1978); *United States v. Tenorio,* 565 F.2d 943, 945 (5th Cir. 1978). These cases were decided after *United States v. Ochoa,* 564 F.2d 1155 (5th Cir. 1977), also a case in which the issue had not been raised below, but in which the court stated that Rule 104(b) instead of 104(a) left the admissibility question to the jury.

2. The Supreme Court has stated that the rationale behind the coconspirator rule is the notion that coconspirators are partners in crime and the law deems them agents of one another. The "in furtherance of the conspiracy" requirement is analogous to the agency theory of "in the scope of the agent's authority." *Anderson v. United States,* 417 U.S. 211, 218 n.6, 94 S.Ct. 2253, 2259 n.6, 41 L.Ed.2d 20, 29 n.6 (1974).

of preliminary questions of fact. The relevant portions of Rule 104 provide:

(a) *Questions of admissibility generally.* Preliminary questions concerning the qualifications of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

(b) *Relevancy conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

(c) *Hearing of jury.* Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require or, when an accused be a witness, if he so requests.

The rule thus adopts the orthodox position that the judge alone decides preliminary questions as to the competence of evidence, and the jury decides preliminary questions as to the conditional relevancy of the evidence.

The language of Rule 104 does not conclude our inquiry, however, for neither that rule nor the Advisory Committee's Notes inform us whether coconspirator's statements are to be dealt with under Rule 104(a) as questions of admissibility or under Rule 104(b) as questions of conditional relevancy.

We must look beyond the language of the rule to its underlying policies to determine who should decide the preliminary questions and what standard of proof should control the decision on admissibility. A rule that puts the admissibility of coconspirator statements in the hands of the jury does not avoid the danger that the jury might convict on the basis of these statements without first dealing with the admissibility question. It was this same danger which motivated the Supreme Court to hold in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that a criminal defendant is entitled to have a "reliable and clear-cut determination of the voluntariness of [his] confession, including the resolution of disputed facts upon which the voluntariness issue may depend," made by someone other than the jury which is to determine his guilt or innocence.[3] *Id.* at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924.

We are therefore convinced that the preliminary questions of conditional relevance envisioned by Rule 104(b) are those which present no such danger of prejudice to the defendant. They are questions of probative force rather than evidentiary policy. They involve questions as to the fulfillment of factual conditions which the jury must answer.

The admissibility of a coconspirator's declarations in a conspiracy trial, however, does pose problems precisely because they are relevant. Such evidence endangers the integrity of the trial because the relevancy and apparent probative value of the statements may be so highly prejudicial as to color other evidence even in the mind of a conscientious juror, despite instructions to disregard the statements or to consider them conditionally. As a result, such statements should be evaluated by the trained legal mind of the trial judge.

Rule 104 has now made it clear that we must revise the procedures adopted in *Apollo* for testing the trustworthiness of coconspirator statements—that is for determining whether a conspiracy existed and whether the defendant and the declarant were members of it. Because the Rule 104(b) exception is inappropriate to test the admissibility of such declarations, we hold that Rule 104(a) requires that the judge

---

3. The Court said that the preliminary determination of the voluntariness of confession could be made by the trial judge, another judge, or another jury. *Jackson, supra,* 378 U.S. at 391 n.19, 84 S.Ct. at 1788 n.19, 12 L.Ed.2d at 924 n.19. Rule 104(c) now requires that hearings on the admissibility of confessions be conducted out of the hearing of the jury.

alone make the determination of the admissibility of the evidence. The jury is to play no role in determining the admissibility of the statements.

The United States, in its brief and on oral argument, urges this court to replace the *Apollo* rule by construing the Rules of Evidence in such a manner as would place the duty to make this determination upon the judge rather than the jury. In reaching this conclusion, we also find ourselves in accord with the courts of appeals of all of the circuits which have addressed the issue. Some of these courts have based such conclusion on their interpretation of the Federal Rules of Evidence. *See, e. g., United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978); *United States v. Enright*, 579 F.2d 980, 982–87 (6th Cir. 1978); *United States v. Bell*, 573 F.2d 1040, 1043–1045 (8th Cir. 1978); *United States v. Martorano*, 557 F.2d 1, 11–12 (1st Cir. 1977); and *United States v. Petrozziello*, 548 F.2d 20, 22–24 (1st Cir. 1977). Other circuits reached the same result prior to the adoption of the Federal Rules. *See, e. g., United States v. Weiner*, 578 F.2d 757, 767–72 (9th Cir. 1978); *United States v. Stanchich*, 550 F.2d 1294, 1298–99 (2d Cir. 1977); *United States v. Trowery*, 542 F.2d 623 (3d Cir.), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1976); *United States v. Jones*, 542 F.2d 186, 202–208 (4th Cir.), *cert. denied*, 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976); *United States v. Geaney*, 417 F.2d 1116, 1119–21 (2d Cir. 1969). The other circuits, the Tenth and the District of Columbia, have not yet decided what effect the new rules have in this field of the law. *See, e. g., United States v. Haldeman*, 181 U.S.App.D.C. 254, 341 n.247, 559 F.2d 31, 118, n.247 (1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

### (B) *By What Standard?*

Under our *Apollo* rule, the trial judge had to determine whether the prima facie test had been met before permitting the jury to consider the statement. In *United States v. Oliva, supra,* we described this test as "whether the government, by evidence independent of the hearsay declarations of the coconspirator, has established a prima facie case of the existence of a conspiracy and of the defendant's participation therein, that is whether the other evidence *aliunde* the hearsay would be sufficient to support a finding by the jury that the defendant was himself a conspirator." 497 F.2d at 133.

It must be borne in mind that the prima facie test was used when the jury also had a part in determining the use of the statements under the *Apollo* ruling. This court has not spoken on the standard which the jury was to apply to this determination. Apparently it was not uncommon for the jury to be instructed that it must find the existence of the conspiracy and the defendant's connection to it beyond a reasonable doubt before ever considering the coconspirator statement.

Since we now conclude that the trial court has the responsibility for determining those questions of fact relating to admissibility of the statement, the standard by which the court makes this determination should be high enough to afford adequate protection to the defendant against whom the evidence is offered, yet not so high as to exclude trustworthy, relevant evidence.

A statement by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), although dictum, supports the principle that the standard must be one that requires the trial judge to find at least enough evidence touching on the critical issues to support a jury verdict. The Court said:

> Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence,[14] of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy.

*Id.* at 701, 94 S.Ct. at 3104, 41 L.Ed.2d at 1060. Footnote 14 in turn contains the significant language:

> As a preliminary matter, there must be *substantial, independent* evidence of a conspiracy, at least enough to take the

question to the jury. . . . Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge.

*Id.* at 701 n.14, 94 S.Ct. at 3104 n.14, 41 L.Ed.2d at 1060 n.14. (Emphasis added) (citations omitted).

There is some confusion resulting from the use of the terms by the several courts of appeals to describe the quantum of proof necessary for the trial judge to admit a coconspirator's statement. Some courts use the "prima facie" standard; others refer to a "fair preponderance" of the evidence. Still others require "substantial independent evidence.[4]"

■ Because of our conclusion, discussed below, that the trial court's threshold determination of admissibility is normally to be made during the presentation of the government's case in chief and before the evidence is heard by the jury, it is more appropriate to adopt a "substantial" evidence rule rather than one which requires, at that stage of the proceedings, a "preponderance" of the evidence. We conclude that, as stated by the court in *Nixon, supra,* a declaration by one defendant is admissible against other defendants only when there is a "sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy," 418 U.S. at 701, 94 S.Ct. at 3104, 41 L.Ed.2d at 1060, and that "as a preliminary matter, there must be *substantial, independent* evidence of a conspiracy at least enough to take the question to the jury." *Id.* at 701 n.14, 94 S.Ct. at

3104 n.14, 41 L.Ed.2d at 1060 n.14. (emphasis added).

■ Although Rule 104(a) provides that the court "is not bound by the Rules of Evidence except those with respect to privileges" we do not construe this language as permitting the court to rely upon the content of the very statement whose admissibility is at issue. We adhere to our requirement established in *Apollo* that fulfillment of the conditions of admissibility must be established by evidence independent of the coconspirator statement itself. This construction of Rule 104(a) comports with earlier Supreme Court pronouncements that admissibility must depend upon independent evidence in order to prevent this statement from "lift[ing] itself by its own boot straps to the level of competent evidence." *Glasser v. United States,* 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680, 701 (1942); *see Nixon, supra.*

(C) *Order of Proof.*

The displacement of *Apollo* by the rule we now announce may affect the order of proof at trial in some cases. In our discussion above, we identify the danger to a defendant in a conspiracy trial when the government tenders a coconspirator's statement before laying the foundation for its admission. Courts have on occasion allowed such statements to be heard by the jury upon the promise that the prosecutor will "connect it up." Of course, if it is connected up, the defendant suffers no prejudice in the order of proof. If, however, the judge should conclude at the end of the trial that

---

4. In *United States v. Ross,* 321 F.2d 61, 68 (2d Cir.), *cert. denied,* 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963), the Court applied the "preponderance" test, but then stated that the required proof was "not as high as the amount needed to warrant submission of a conspiracy charge to the jury." This standard has been restated most recently for the Court of Appellees for the Second Circuit in *United States v. Stanchich,* 550 F.2d 1294, 1299 n.4 (2d Cir. 1977), and *United States v. Geaney,* 417 F.2d 1116, 1119 (2d Cir. 1969).

The Court of Appeals for the Third Circuit adopted the "preponderance" phrase as its standard, citing *Geaney,* but it construed the

standard as "more severe than the prima facie standard," *United States v. Trotter,* 529 F.2d 806, 812 (3d Cir. 1976). The standards applied by other circuits can be understood by reference to the following cases: *United States v. Enright,* 579 F.2d 980 (6th Cir. 1978); *United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978); *United States v. Martorano,* 557 F.2d 1 (1st Cir. 1977); *United States v. Haldeman,* 181 U.S. App.D.C. 254, 559 F.2d 31 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Jones,* 542 F.2d 186 (4th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 375 (1976).

the proper foundation has not been laid, the defendant will have been prejudiced from the jury's having heard the inadmissible evidence.

While the government here urges that the practice of "connecting up" be permitted to continue at the discretion of the trial judge, it suggests a remedy for failure to make the connection which may be more burdensome and expensive of prosecutorial and judicial effort than a reordering of the proof. The government suggests that "should the trial judge determine that the government has not carried its burden in connecting the previously admitted evidence, the court may 'upon appropriate motion, declare a mistrial, unless a cautionary instruction to disregard the statement would suffice to cure any prejudice.' *U. S. v. Bell,* 573 F.2d 1040, 1044 (8th Cir. 1978); *U. S. v. Stanchich,* 550 F.2d 1294, 1298 (2d Cir. 1977)." Brief for the United States at 27. In *Stanchich* the court quoted from its prior decision in *United States v. Geaney,* 417 F.2d 1116 (2d Cir. 1969), which required the judge, who has concluded that the statement has not been connected, to "instruct the jury to disregard the hearsay, or, when this was so large a proportion of the proof as to render a cautionary instruction of *doubtful* utility . . ., declare a mistrial if the defendant asks for it." 417 F.2d at 1120 (emphasis added).

The Court of Appeals for the Eighth Circuit has included a preferential course of action in its interpretation of the new rules dealing with the admission of such evidence. In *United States v. Macklin,* 573 F.2d 1046 (8th Cir. 1978), after stating that the new rule "does not alter the traditional discretion of the trial judge to allow the government to place the statement into evidence on the condition that it be later shown" to be connected, stated:

> [I]t is preferable whenever possible that the government's independent proof of the conspiracy be introduced first, thereby avoiding the *danger,* recognized in *Petrozziello* of injecting the record with inadmissible hearsay in anticipation

of proof of a conspiracy which never materializes.

573 F.2d at 1049 n.3 (emphasis added).

In *Petrozziello, supra,* the court said in a footnote:

> The judge insisted that the government present all its non-hearsay first. He then decided whether that evidence permitted reliance on the co-conspirator exception. Nothing in the new rules or this opinion requires that the judge's meticulous approach be abandoned. Although time-consuming, it avoids the *danger* that hearsay will be admitted in anticipation of a later showing of conspiracy that never materializes.

548 F.2d at 23 n.3 (emphasis added).

■ Both because of the "danger" to the defendant if the statement is not connected and because of the inevitable serious waste of time, energy and efficiency when a mistrial is required in order to obviate such danger, we conclude that the present procedure warrants the statement of a preferred order of proof in such a case. The district court should, whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it before admitting declarations of a coconspirator. If it determines it is not reasonably practical to require the showing to be made before admitting the evidence, the court may admit the statement subject to being connected up.

(D) *At the End of the Trial.*

■ Regardless of whether the proof has been made in the preferred order, or the coconspirator's statement has been admitted subject to later connection, on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy. Rule 801(d)(2)(E). If the court concludes that

the prosecution has not borne its burden of proof on these issues, the statement cannot remain in the evidence to be submitted to the jury. In that event, the judge must decide whether the prejudice arising from the erroneous admission of the coconspirator's statements can be cured by a cautionary instruction to disregard the statement or whether a mistrial is required. *See United States v. Bell,* 573 F.2d 1040, 1044 (8th Cir. 1978); *United States v. Stanchich,* 550 F.2d 1294, 1297–98 (2d Cir. 1977).

(E) *Conclusion.*

██ This opinion intends to establish minimum standards for the admissibility of coconspirator statements. Nothing stated here shall prevent a trial judge from requiring more meticulous procedures to assure that such statements (1) are not admitted until properly authenticated by substantial independent evidence and (2) do not remain in the proof to be submitted to the jury unless their admissibility is established by a preponderance of the evidence.

██ In the case at bar, the district court applied the rule enunciated by this court in *United States v. Apollo, supra,* as elaborated in *United States v. Oliva,* 497 F.2d 130 (5th Cir. 1974). Under that rule, the trial court did not submit the evidence to the jury for its determination of admissibility until it determined that the prosecution "ha[d] established a prima facie case of the existence of a conspiracy and of the defendant's participation therein, that is [that] the other evidence *aliunde* the hearsay would be sufficient to support a finding by the jury that the defendant was himself a conspirator." 497 F.2d 132–33. Although the procedures which we now adopt are different from the prima facie rule announced in *Oliva* we do not disturb the conclusion reached by the panel of this Court that the admission of the hearsay statements was fully supported because there was "a preponderance of the independent evidence that the conspiracy existed, that each of the defendants and appellants were members of it, and that the statements were made in the course of and in furtherance of the conspiracy."

██ Exercising this court's supervisory power over the district courts, *see LaBuy v. Howes Leather Co., Inc.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290, 299 (1957); *United States v. Mendoza,* 565 F.2d 1285, 1292 (5th Cir.) *aff'd,* 581 F.2d 89 (5th Cir. 1978) (en banc); *United States v. Chiantese,* 560 F.2d 1244, 1254 (5th Cir. 1977) (en banc), we adopt these rules only prospectively. *Cf. Chiantese, supra,* 560 F.2d at 1256. Accordingly, they are required only as to coconspirator statements which the government seeks to introduce in trials commencing after 30 days from the date of this opinion.

The judgment is AFFIRMED.

GEE, Circuit Judge, specially concurring:

Although I think the majority crafts, in its well-written opinion, a tolerable solution to the difficult evidentiary problems posed by this appeal, I share many of the concerns expressed by Judge Tjoflat in his special concurrence—especially those regarding the trial judge's control over the order of proof—and prefer the course which he suggests.

Among my difficulties with the majority opinion is its description of its construction of Rule 104 as "the orthodox position." I do not think a division of preliminary questions about the admissibility of evidence between judge and jury orthodox at all. Nor do I ascertain in the *text* of Rule 104 any disposition to depart from the received practice by assigning decision of any such matters to the jury.[1]

. Because I cannot improve upon them, I offer the words of Dean McCormick, both for the proposition that decision of all such matters by the trial judge is orthodox and as explaining why it is preferable:

---

1. I recognize, as I must, that the Committee Notes do contain expressions supportive of the majority position. One can only wonder, however, why no faintest nod in such a direction is apparent in the rule itself.

"It is orthodox that all questions affecting the admissibility of evidence belong to the province of the trial judge. It follows that, when the admissibility of a given piece of evidence depends upon some preliminary question of fact, the existence or nonexistence of that fact is to be determined by the judge. (Citing Wigmore.) These include such facts as: Whether a confession was voluntarily made, whether a witness has qualified as an expert, whether an instrument is admissible as an ancient document, whether sufficient foundation has been laid for the admission of secondary evidence of the contents of a written instrument, whether a conspiracy has been sufficiently shown to warrant the introduction of the statements of an alleged conspirator,

. . . .

"Of course where the evidence as to the existence of the preliminary fact is undisputed and such as to admit of only one finding, no difficulty arises. But where the evidence is disputed and is such that a reasonable man might find either way, a number of decisions have departed from the orthodox rule. They leave the question of admissibility more or less to the jury. For example, in Massachusetts if the judge finds that the fact exists, he must admit the evidence and charge the jury to exclude it unless they also find that the preliminary fact exists. . . .

" . . . Although this heterodox practice may be due to a fortuitous combination of circumstances, arguments in its favor are not lacking. One of the most common is that adherence to the orthodox rule results frequently in the judge entirely disposing of the case. But the answer to this is: First, that there is no rule requiring that all relevant evidence be submitted to the jury, and, second, there is nothing inherently wrong with judge-made decisions.

"When the preliminary fact coincides with an ultimate fact on the merits it has been argued that since the jury must alternately pass upon the existence of the fact it makes no difference whether they do it as an incidental question of admissi-

bility or as a final ruling on the merits. And it is said that the jury may find differently from the judge. But this is no objection. There is no requirement that the findings of the judge and jury be consistent, even if made for the same purpose. A fortiori where as here the purposes are very different. The judge passes on the question only for the purpose of deciding whether the evidence shall go to the jury. If admitted, the jury then pass upon the same question for the purpose of determining the credibility and sufficiency of the evidence.

"The sound arguments unquestionably favor the orthodox rule. In the first place, it is the simple one. To leave questions of admissibility to the jury merely 'cumbers the jury with legal definitions and offers an additional opportunity for quibbling over the tenor of the instructions.' Moreover, if these questions are left with the trial judge a greater degree of consistency will be attained. Certainly this element of predictability is desirable. Furthermore, since the very purpose of the exclusionary rules is to keep from the jury evidence which may prejudice them in their decision, this protection is better guaranteed by permitting the judge to entirely exclude objectionable evidence. Finally, unless we are prepared to scrap the exclusionary rules, it would seem that the orthodox rule must prevail, for all arguments in favor of the heterodox practice strike at the very foundation of the exclusionary rules."

1 McCormick and Ray, Texas Law of Evidence 2–5 (2d ed. 1956).

This simple rule seems to me best: what goes into the record is the responsibility of the judge; what (of this) is credited, that of the jury. I therefore concur in the result only.

TJOFLAT, Circuit Judge, with whom AINSWORTH, Circuit Judge joins, specially concurring:

The original panel in this case, after concluding that the appellants' drug conspiracy trials contained no reversible error and that

their convictions should be affirmed, undertook "to revisit *Apollo* and to establish the correct standard and procedure for handling the admissibility of coconspirator statements in criminal conspiracy trials" in this circuit. *United States v. James,* 576 F.2d 1121, 1127 (5th Cir. 1978). The procedure devised was a "minitrial." Construing Fed.R.Evid. 104 and 611(a), the panel instructed that a district judge may not allow the jury to hear a coconspirator's out-of-court declaration until the judge, following a hearing conducted outside the presence of the jury, has determined by a preponderance of the evidence that the declaration is admissible under Fed.R.Evid. 801(d)(2)(E). 576 F.2d at 1131–32.

This case was taken en banc because the minitrial procedure fashioned by the panel is obviously unworkable and onerous. Indeed, the panel's approach might well require a district judge, after the jury has been sworn, to try the entire case twice—once at the minitrial on the admissibility question and once before the jury on the issue of guilt. The en banc majority, in vacating part IV of the panel opinion which established the new minitrial procedure, makes no comment about the panel's rationale except to say that it created possible conflicts with prior decisions of this court dealing with the admission of out-of-court coconspirator declarations. *Ante* at 577.

Today the majority, exercising the court's supervisory power, rewrites part IV of the panel's opinion. It substitutes for the panel's rigid minitrial approach an order of proof, designed to accomplish the minitrial objective, which requires the district court's determination of admissibility "normally to be made . . . *before* the [out-of-court declaration] is heard by the jury." *Ante* at 581 (emphasis added). In an attempt to ameliorate the heavy burden that such a requirement will inevitably impose, especially on the prosecution and the court, during the course of a trial, the majority dis-

cards the panel's preponderance of the evidence standard for determining whether the predicate to admissibility has been established and replaces it with a lower standard, one of "substantial independent evidence." At the same time, the majority tacitly acknowledges that the substantial independent evidence standard is inappropriate, for the majority commands the trial judge, when reviewing the admission of the coconspirator's statement at the conclusion of the trial, to determine the predicate to admissibility by a preponderance of the evidence. *Ante* at 582–583.

In order to promulgate this new set of rules to govern the admissibility of coconspirator declarations, *ante* at 583, the majority felt it necessary to interpret Fed.R. Evid. 104, which concerns the reception of evidence whose admissibility turns on preliminary questions. Although the majority opinion makes no explicit reference to any other Federal Rule of Evidence, it clearly implicates three of them: rule 611(a), the rule prescribing the district court's discretion in ordering the proof at trial; rule 402, the threshold rule making relevant evidence presumptively admissible; and rule 403, which requires the court to receive relevant evidence unless its probative value is substantially outweighed by the danger of unfair prejudice. I write separately not only because I believe the majority misreads the letter and the spirit of these rules, but also because they disharmonize the operation of other rules critical to the orderly and just conduct of trials in which coconspirator statements are offered.

The majority writes in the context of a case in which the defendants have been charged with criminal conspiracy, but the majority opinion sweeps far beyond conspiracy trials and impinges upon any case in which statements by those involved in concerted criminal activity implicate the accused.[1] That the coconspirator rule has

---

1. The majority's rule affects any prosecution implicating scheme-type criminal conduct. For example, it would apply to prosecutions for aiding and abetting, 18 U.S.C. § 2 (1976), and those brought under the many statutes Con-

gress has enacted to combat organized crime, *e. g.,* 18 U.S.C. § 1955 (1976) (prohibition of illegal gambling business); 18 U.S.C. §§ 1961–68 (1976) (the RICO statute). Moreover, the majority's approach goes beyond even the

general applicability is unequivocally demonstrated by the legislative history of the federal rules. "While the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule *even though no conspiracy has been charged.*" S.Rep.No.93–1277, 93d Cong., 2d Sess. 24, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7051, 7073 (emphasis added).

In order to understand precisely what the majority has done, I think it useful to recall the practice regarding the admissibility of coconspirator statements before the adoption of the Federal Rules of Evidence. Once this background is set forth, I shall describe what I believe to be the impact of the Federal Rules on prior practice and shall attempt to demonstrate the inappropriateness of the procedures the majority now prescribes.

I

Prior to the adoption of the Federal Rules of Evidence, a district judge faced with a hearsay objection to an out-of-court statement by a coconspirator made in the absence of the defendant[2] normally made the following inquiries after determining that the statement was relevant to an issue in the case.

First, is there a sufficient predicate to allow the statement to be received for the truth of its contents? In deciding this question, the judge looked to the evidence already presented to the jury to see if it established a prima facie showing that the statement was made by a coconspirator of the defendant during and in furtherance of the conspiracy. *United States v. Oliva,* 497 F.2d 130, 132 (5th Cir. 1974). If the evidence before the jury met this prima facie test, the statement would have been admitted for the truth of its contents. If the evidence failed the prima facie test, the court, generally in a voir dire hearing, might have entertained the Government's proffer of the predicate necessary to the statement's admissibility. If satisfied that the Government, by the conclusion of its case-in-chief, would have made a prima facie showing, by evidence independent of the statement itself, that a conspiracy involving the defendant existed and that the statement was made by a coconspirator during and in furtherance thereof, the court would have received the statement subject to connection, reserving to the close of the Government's case its ruling on the hearsay objection. Whether the court received the statement after the predicate to admissibility had been demonstrated or beforehand subject to connection, it was required to give the *Apollo* instruction when the statement was received.

Second, if the predicate, in the evidence presented to the jury or in the Government's proffer, were insufficient to admit the statement for the truth of the matter asserted, is the statement otherwise admissible to prove an issue unrelated to the truth of the statement? The statement might have been admissible as bearing on one or more of a variety of other issues; for example, the mere act of making the statement may be probative of the declarant's knowledge of the conspiracy[3] and its objectives, or the words spoken may tend to show the role the declarant played in the conspiracy and may be probative of his intent.

*United States v. Adams,* 470 F.2d 249 (10th Cir. 1972). Under the Federal Rules of Evidence, this exception is preserved in rule 801(d)(2)(B), which declares such statements not hearsay.

3. *Cf. United States v. Carter,* 491 F.2d 625, 628–29 (5th Cir. 1974) (statement not hearsay when probative of lack of knowledge that automobile was stolen).

criminal realm to dictate the standards for the admissibility of coconspirator declarations in civil trials, because the Federal Rules of Evidence are applicable in both civil and criminal cases. Fed.R.Evid. 1101(b).

2. If the statement were made in the defendant's presence and under circumstances that would ordinarily call for a contradiction on his part, it would have been admissible under the adoptive admission exception to the hearsay rule. *E. g.,*

Third, if the statement tends to establish or controvert an issue regardless of its truth, does the probative value of the statement to prove matters other than its contents outweigh the prejudice flowing from the revelation of its contents to the jury and the danger that the jury might accept them as true? If the probative value outweighed the prejudice, the statement was received. Of course, in this instance an *Apollo* instruction was inappropriate.[4]

At the conclusion of the Government's case and, if warranted, at the conclusion of all the evidence, the court might have reconsidered the propriety of admitting the statement to prove the truth of its contents in conjunction with the court's entertainment of a motion for judgment of acquittal. For example, in permitting the statement to come before. the jury subject to later connection, the court might have opted to defer ruling on the defendant's hearsay objection until the conclusion of the Government's case, or the court might have received the statement unreservedly, without qualification, subject only to the defendant's right to renew his objection, in the form of a motion to strike, at the close of the Government's proof (and, again, at the close of all the evidence if the defense chose to put on a case). In reconsidering the hearsay objection, the court examined the record to determine whether the Government had established a conspiracy by the evidence, viewed in the light most favorable to the Government under *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), independent of the truth value of the questioned statement. If the court concluded that a conspiracy had not been proven, a ruling on the hearsay objection would be unnecessary since a judgment of acquittal would be in order. However, if the independent evidence justified the submission of the conspiracy charge to the jury, the court's assessment of the statement's admissibility continued. In the event the court found that not all the remaining prerequisites of admissibility, i. e., that the statement was made during the course of *and* in furtherance of the conspiracy, had been established by prima facie evidence, the court could have stricken the statement and admonished the jury not to consider it or it could have granted a mistrial if instructions would have been inadequate to erase the prejudice caused by the erroneous reception of the statement.[5]

The common law developed these procedures to give the trial judge maximum flexibility in ordering the proof at trial to the end that the evidence be presented in an intelligible way. *See United States v. Apollo,* 476 F.2d 156, 163 (5th Cir. 1973). The *Apollo* instruction was designed to accommodate this discretion while preserving the defendant's right not to be convicted because of an inadmissible coconspirator statement. *Id.*

## II

Before embarking on a detailed discussion of the new rules of evidence and how the majority largely misconstrues them, I briefly. summarize how the new rules alter the preexisting process. As the majority correctly holds, the task for determining the admissibility of coconspirator state-

---

4. The court might, however, have considered giving a cautionary instruction admonishing the jury not to consider the statement for the truth of its contents. The problem in giving such an instruction was (and is) that, in the event that the predicate for the hearsay exception were established subsequent to the cautionary instruction, the court would have been required to give a supplementary instruction advising the jury that it was entitled to consider the truth of the contents of the statement. Since this supplementary instruction tends to emphasize the significance of the statement, most defendants requested that the limiting instruction not be given initially.

5. In weighing the merits of a motion to strike or for a mistrial, the trial court would of course have considered whether the statement was admissible for any purpose other than to establish the truth of the matter asserted. If the statement was probative of other matters, the court would have weighed such probative value against any prejudice that might have resulted from the jury's consideration of the statement as true. Only in the event that the prejudice outweighed the probative value would the granting of either motion have been in order. *Cf.* Fed.R.Evid. 403.

ments to establish the truth of their contents is now for the judge alone. This, rule 104(a) mandates. Therefore, the *Apollo* instruction is no longer appropriate.

In determining whether to receive a coconspirator statement under rule 801(d)(2)(E), the trial judge may consider any matter touching on the prerequisites to admissibility. He is "not bound by the rules of evidence except those with respect to privileges," Fed.R.Evid. 104(a); hence, he may consider the coconspirator statement itself. The majority distorts the manifest intent behind rule 104(a) in construing it to the contrary. Moreover, there is no place in a rule 104(a) determination for the "substantial evidence" test espoused by the majority. This test, as the majority acknowledges, is for measuring whether the predicate to admissibility is sufficient for a jury; it cannot control the judge's duty under rule 104(a) to decide whether the predicate has been established.

The rules do not disturb the district court's discretion in ordering the proof at trial; that discretion is reaffirmed in rule 611(a). Accordingly, complicated cases should still be tried in a manner that the court judges to be comprehensible to the jury. Thus, I believe, the rules seek to avoid a miscarriage of justice that might result if we straitjacket the district judges of our circuit by requiring them to alter the natural progression of the trial.

### A

I read the Federal Rules of Evidence to envision the following procedures for the admissibility of coconspirator statements. I agree with the majority's conclusion that the rules call for the rejection of *Apollo* and that the question of admissibility is one solely for the judge under rule 104(a). I

reach this result on somewhat different grounds, however. The requirements of rule 801(d)(2)(E) that the statement be made by a coconspirator during and in furtherance of the conspiracy are not conditions on the statement's *relevancy*, which is the sole concern of rule 104(b). Statements may be highly relevant even though the conditions of rule 801(d)(2)(E) are not met. A classic example of such a statement is a postarrest confession. It is not made during the conspiracy because the declarant has been arrested, *United States v. Warren,* 578 F.2d 1058, 1074 (5th Cir. 1978) (en banc), and it is hard to imagine a case in which such a confession is made in furtherance of the conspiracy. As this example amply demonstrates, the 801(d)(2)(E) requirements are not conditions on the relevancy of the statement but rather on its admissibility. It is clear, therefore, that the issue whether those requirements have been met is one for the judge under 104(a), because it provides, "Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of [104(b)]." [6]

### B

As to the standard that the judge should apply in determining whether the statement is admissible, I believe that logic calls for the employment of the preponderance of the evidence test. The majority's position on this point is, to me, ambiguous at best. First it holds that the "prima facie" test of *United States v. Oliva,* 497 F.2d 130 (5th Cir. 1974) (whether the Government's case, independent of the coconspirator's statement, is sufficient to support a jury finding that the defendant was a member of the conspiracy) is inapposite because rule 104(a) now calls for the judge, not the jury,

---

**6.** This approach would render unnecessary the confusing, and I believe incorrect, suggestion by the original panel, 576 F.2d 1121, 1129 (5th Cir. 1978), which is adopted by the majority, *ante* at 579, that the jury cannot consider prejudicial evidence when determining relevancy under rule 104(b). This circuit, sitting en banc, recently rejected the notion that the jury is incompetent to consider

conditionally relevant evidence that is substantially prejudicial. In *United States v. Beechum,* 582 F.2d 898 (5th Cir. 1978) (en banc), we held that rule 104(b) supplies the standard for the admissibility of evidence relating to offenses extrinsic to the indictment. As we observed in *Beechum,* extrinsic offense evidence is inherently prejudicial. *Id.* at 910.

to determine the statement's admissibility. *Ante* at 580. Then, I submit, it proceeds to adopt the very test it purports to reject. Borrowing language from *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the majority holds that a coconspirator's declaration is not admissible unless " 'there [is] *substantial, independent* evidence of a conspiracy at least enough to take the question to the jury.' " *Ante* at 580–581. How this substantial evidence test differs from the prima facie test I am unable to perceive. Each test is met if the Government's independent evidence is sufficient to support a jury finding that the defendant was a member of the conspiracy.

In choosing the substantial evidence test the majority considers, and rejects out of hand, the preponderance of the evidence standard. It says:

> Because . . . the trial court's threshold determination of admissibility is normally to be made during the presentation of the government's case in chief and before the evidence is heard by the jury, it is more appropriate to adopt a "substantial" evidence rule rather than one which requires . . . a "preponderance" of the evidence.

*Ante* at 581. Yet, in setting forth the procedure the trial judge must follow at the conclusion of a conspiracy trial, the majority states that, upon appropriate motion, the court must determine whether the prosecution has established by a preponderance of the evidence the predicate for the admissibility of the coconspirator's statement. Thus, this anomaly may result: the judge permits the jury to hear the coconspirator's statement because the Government has shown the existence of the conspiracy by substantial evidence, but at the end of the trial the statement must be stricken because the judge, in applying the preponderance of the evidence test, determines that the conspiracy did not in fact exist.

To support my conclusion that the preponderance of the evidence standard alone must apply in resolving the question of admissibility, I posit the following hypothetical. Assume that the defendant is being tried for the substantive offense of possession of a controlled substance with intent to distribute and that he was a member of a conspiracy to achieve that end but is not charged with conspiracy. Statements made by this defendant's coconspirators would not be excludable as hearsay if it could be demonstrated that the conspiracy existed, that the defendant was a member, and that the statement was made during and in furtherance of the conspiracy. *United States v. Wright,* 491 F.2d 942, 946 (6th Cir. 1974); *United States v. Mendoza,* 473 F.2d 692, 695 (5th Cir. 1972); see text following note 2 *supra. But see United States v. Harrell,* 436 F.2d 606, 616 (5th Cir. 1970), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972). It seems clear to me that the task for the trial judge in this instance would be to determine these conditions by a preponderance of all the evidence.[7] It is immediately apparent that it would not be enough that there be sufficient evidence for a jury finding that these conditions were met; indeed, the jury would never pass on the issue. The judge would be compelled to consider all the evidence, weigh it and make credibility choices, and determine whether it preponderates in favor of a finding that rule 801(d)(2)(E) has been satisfied. The rules do not differentiate between the standards for admitting coconspirator statements in conspiracies that are charged and those that are not, and I find nothing calling for a distinction. Surely, the evidentiary policies in both cases are identical. Hence, the majority's reliance on a "substantial evidence" standard, which it defines to be " 'at least enough [evidence] to take the question to the jury,' " *ante* at 581, is in my view inappropriate.

---

7. The preponderance standard is applied to determine the admissibility of other highly prejudicial evidence. Suppression hearings are governed by this standard, *United States v. Matlock,* 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974), as are hearings to determine the voluntariness of confessions, *Lego v. Twomey,* 404 U.S. 477, 486–87, 92 S.Ct. 619, 625, 30 L.Ed.2d 618 (1972).

The majority may be concerned that requiring proof by preponderance would impose too heavy a burden on the prosecution, but this is the standard employed in all instances where the judge determines admissibility under rule 104(a). Who would question the appropriateness of the preponderance standard when the judge decides preliminary issues such as the competency of witnesses, the existence of privileges, or the availability of the numerous exceptions to the hearsay rule? Historically, trial courts have been called upon to consider evidence, often in the form of a proffer by counsel, in deciding these preliminary issues. The competency of a witness may, for example, turn not only on the court's observation of the witness during voir dire but also on the weighing of other matters bearing on the witness's capacity to testify. To permit the witness to testify the court must find that the evidence preponderates in favor of competency; it could not seriously be contended that the court should allow a witness to testify if the greater weight of the evidence indicates that he is incompetent or if the evidence on the competency issue were in equipoise.

The trial court employs the same procedure in determining whether any of the common law privileges may be invoked. For example, in deciding whether an attorney-client privilege exists, the court must be presented with a factual predicate showing the existence of the attorney-client relationship, that the testimony sought to be elicited deals with confidential communications made in the context of that relationship, and that the privilege has not been waived.

The hearsay exceptions embodied in rules 803 and 804 present classic examples of factual inquiries that must be undertaken by the trial judge. It is apparent from a cursory reading of each of these exceptions that a factual inquiry is required and that the evidence must preponderate in favor of an exception before the hearsay can be admitted. Consider, for example, the catch-all exceptions in 803(24) and 804(5), which allow hearsay not expressly covered by a designated exception to be received "if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other." Rule 104(a) mandates that the judge resolve the preliminary issues with finality. He cannot, as the majority would have him do, discharge this duty simply by finding, when faced with an objection to the reception of the evidence, that the proponent of the evidence has made a showing sufficient to take the issue of admissibility to a hypothetical jury.

In sum, the burden of resolving factual issues upon which admissibility is predicated is commonplace in the courtroom. The burden under the coconspirator exception is no different and should receive no different treatment—the predicate for the admissibility of a coconspirator declaration should be established by a preponderance of the evidence, not by a standard that measures the sufficiency of a case for the jury. The intolerable burden that the majority evidently perceives to be involved in requiring a trial judge to determine the admissibility of coconspirator declarations by a preponderance of the evidence is not caused by the rules of evidence but by the majority's insistence that "the trial court's . . . determination of admissibility . . . normally . . . be made . . . *before* the evidence is heard by the jury." *Ante* at 581 (emphasis added).

I would not deny the trial judge the considerable discretion provided him by the rules to control the "mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a). The trial judge is given wide latitude by this rule to decide when during the trial and in what manner the predicate for admissibility is developed. Depending upon the circumstances of the case, he may deem it prudent to receive the evidence conditionally on nothing more than the representations of counsel at a

routine sidebar conference. At the other extreme, he may think that the potential for mistrial, if the admission of the evidence proves to be erroneous, is so great that nothing less than a full-blown evidentiary hearing is necessary to ensure that the statement is properly admissible. *See* McCormick, *Evidence* § 53, at 122 (2d ed. 1972). Rule 611(a) contemplates that the trial judge enjoy the broad spectrum of discretion between these extremes. But the majority's requirement that the issue of admissibility normally be resolved before the statement is received in evidence would confine him to the latter extreme—the minitrial—if the decision had to be made by a preponderance of all the evidence. It is only for this reason that the substantial evidence rule is "more appropriate." *Ante* at 581.

I can imagine no more compelling situation in which the judge's discretion in evaluating the predicate to admissibility is necessary and appropriate than in conspiracy-type trials, which are often highly complex and always difficult to present to the jury in a meaningful way. The majority would permit the trial judge to depart from the normal minitrial procedure and to receive the coconspirator's declaration subject to connection only if it determines that "it is not reasonably practical" for the prosecution to establish the predicate to admissibility by substantial independent evidence before eliciting the declaration in the presence of the jury. *Ante* at 582. The majority does not indicate what circumstances might make it "not reasonably practical" for the prosecutor to establish the predicate to admissibility in the preferred order, whether and to what extent findings as to the impracticability must be expressed by the trial judge if he declines to follow the normal procedure, and the standard we shall henceforth employ in reviewing his action.

It should always be borne in mind that however the trial judge exercises his discretion in deciding to admit a hearsay statement or any other evidence to which objection has been voiced, his decision is subject to review before the case is submitted to the jury. If a party persists in its objection, the judge will reassess his earlier ruling on the record as a whole, both at the conclusion of the Government's case-in-chief and at the close of all the evidence, to determine whether the predicate to admissibility has been established by a preponderance of the evidence.[8] If, for example, the predicate to the admissibility of a coconspirator's statement to establish the truth of its contents is not found by a preponderance of the evidence, the judge may instruct the jury to disregard the statement or, if justice so requires, grant a motion for mistrial. At this posture of the case, the trial judge would of course consider whether the statement had any evidentiary value apart from its hearsay aspects and, if so, would determine its admissibility under rule 403 (quoted in note 12 *infra*). See note 5 *supra*.

### C

Contrary to the majority's position, I would allow the trial judge to consider the contents of the proffered statement in determining its admissibility. I think this is

---

8. The majority concedes that at the close of all the evidence, the judge must decide a motion to strike by a preponderance of all the evidence. *Ante* at 582–583. The anomaly of applying at this point a different standard from the one applied when the statement was offered has already been noted. It is interesting to note that the majority makes no provision for a preponderance of the evidence review at the close of the Government's case-in-chief, as distinguished from the close of all the evidence. The majority either thinks such a review is unnecessary at this juncture or believes that such a review, before the trial is concluded, would be too burdensome.

It seems to me that both the trial judge and the parties would want to know, at the close of the Government's case-in-chief, precisely what evidence is in the record *and* will eventually be considered by the jury in its deliberations. Until this is determined, the court may find it difficult to pass on a motion for judgment of acquittal or for a mistrial. It would be anomalous to decide either motion on the basis of evidence admissible only because "substantial evidence" supported the predicate, but the majority does not say what standard should be used at this point.

the clear mandate of the last sentence of rule 104(a), which states, "In making its determination [the court] is not bound by the rules of evidence except those with respect to privileges." [9] Significantly, the Supreme Court, in determining that the judge may consider hearsay at suppression hearings, made reference to what was then proposed rule 104(a) and went on to observe,

> There is . . . much to be said for the proposition that in proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from the rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel. However that may be, certainly there should be no automatic rule against the reception of hearsay evidence in such proceedings . . . . .

*United States v. Matlock,* 415 U.S. 164, 175, 94 S.Ct. 988, 995, 39 L.Ed.2d 242 (1974).

My reading of the rule is also reinforced by the Advisory Committee Notes to rule 104(a). " '[T]he judge should be empowered to hear any relevant evidence, such as affidavits or other reliable hearsay.' " 28 U.S. C.A. Rules of Evidence at 41 (1975) (quoting McCormick, *Evidence* § 53, at 123 n.8 (1st ed. 1954)). The Notes continue,

> An item, offered and objected to, may itself be considered in ruling on admissibility, though not yet admitted in evidence. Thus the content of an asserted declaration against interest must be considered in ruling whether it is against interest. . . . In the case of hearsay, it is enough, if the declarant "so far as appears [has] had an opportunity to observe the fact declared."

*Id.* (again quoting McCormick, *Evidence* § 10, at 19 (1st ed. 1954)). I am unable to reconcile the majority's position—that the coconspirator's statement cannot be used for *any* purpose in determining its admissibility under rule 104(a)—with the language

of the rule, the Advisory Committee Notes, or the Supreme Court's observation in *Matlock.*

As a practical matter, I do not think the determination whether the statement should be received in evidence will in many cases turn on whether the court considers the truth-value of the statement. A decision that the statement is admissible to prove its truth automatically establishes that the statement would be admissible for other purposes, since satisfaction of "[t]he requirement that admissible declarations of coconspirators be in furtherance of the conspiracy virtually insures that the declarations will fall within the category of 'verbal acts,' which are not hearsay." McCormick, *Evidence* § 53, at 19 (2d ed. Supp.1978) (footnotes omitted). To determine whether this requirement has been met clearly necessitates consideration of the content of the statement.

The majority paints with such a broad brush, however, that it apparently obliterates the possibility of admitting coconspirator statements when relevant to issues apart from the verity of the statements. There is absolutely nothing in its opinion to the contrary. Indeed, the majority states,

> We conclude that . . . a declaration by one defendant is admissible against other defendants *only when* there is a "sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy," [*United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)], and that "as a preliminary matter, there must be *substantial, independent* evidence of a conspiracy at least enough to take the question to the jury." *Id.* at 701 n.14, 94 S.Ct. at 3104 n.14, 41 L.Ed.2d at 1060 n.14 (emphasis added).

---

9. To this extent, I believe that rule 104(a) overrules the language quoted by the majority from *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). *Ante* at

581. The First Circuit has so construed the rule. *United States v. Martorano,* 557 F.2d 1, 12 (1st Cir. 1977).

*Ante* at 581 (except as noted, emphasis added).[10] In my judgment this approach amounts to a judicial repeal of rule 402,[11] which makes relevant evidence presumptively admissible. *United States v. Beechum*, 582 F.2d 898, 907 n.7 (5th Cir. 1978) (en banc). Invariably, a coconspirator's declaration is probative of matters other than the truth of its contents—the declarant's membership in the conspiracy, the character of his intent, the objectives of the conspirators, the identity of members other than the defendant and so on. And as a trial progresses and other issues are raised, such as the credibility of the witnesses, including the declarant, the contents of his out of court statement may well have additional bases of admissibility.

Finally, in addition to restricting, if not altogether foreclosing, the trial judge's authority to admit coconspirator declarations to prove other matters unless the prosecution complies with the substantial independent evidence rule, the majority removes from the trial judge's discretion his authority under rule 403[12] to weigh the probative value of the evidence for other purposes against its prejudice when considered for the truth of its contents. In effect, the majority creates a conclusive presumption that the danger of unfair prejudice substantially outweighs its probative value.[13] Although written in the context of a criminal coconspirator's statement, the logic of the majority's opinion would apply equally to any admissions, if not all out-of-court utterances, as to which a hearsay objection is

raised. I find nothing in the rules, common law, or commentary that would justify the majority's special treatment of the narrow evidentiary question before us.

## III

It seems to me that the only justification that the majority has for depriving the trial judge of his traditional discretion in ordering the proof at trial is that, given a free hand to control the presentation of the evidence, he may have to declare a mistrial because of the erroneous admission of a hearsay statement. The majority professes that its procedures are designed to obviate "the inevitable serious waste of time, energy and efficiency when a mistrial is required." *Ante* at 582. I find it hard indeed to believe the majority's rule is founded on a concern for judicial economy. The majority's preadmission determination mandate will affect virtually every federal trial, both criminal and civil, involving concerted activity, because its analysis is founded on the construction of a rule of evidence of general applicability in all proceedings in federal district court. *See* Fed. R.Evid. 1101(b); note 2 *supra*. Moreover, this preadmission determination rule will be applied whenever a coconspirator statement is sought to be admitted, whether for the truth of the matter asserted or otherwise. In today's world of increasingly complex and sophisticated criminal cases, this will occur repeatedly in a given trial.

---

**10.** The quotations from *Nixon* are, as the majority notes, dicta. More importantly, *Nixon* was decided a year before the Federal Rules of Evidence became effective and the Court did not purport to interpret the proposed rules. *Cf. United States v. Matlock*, 415 U.S. 164, 1975, 94 S.Ct. 988, 995, 39 L.Ed.2d 242 (1974).

**11.** Rule 402 provides as follows:
Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

**12.** Rule 403 provides as follows:
Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**13.** The majority would permit statements to come in subject to connection if it is "not reasonably practical" to establish the predicate prior to admission. This exception still requires that the 801(d)(2)(E) tests be met; it would not permit the admission of statements for their nonhearsay value alone.

The procedure I believe the federal rules call for would result in so few unnecessary mistrials that far less judicial energy would be wasted than under the majority's plan. The majority admits that the defendant will not be impermissibly prejudiced by the admission of a statement subject to connection if, at the end of trial, the trial judge is able to find the predicate for admission by a preponderance of the evidence. Experience leads me to think that this will be the case in practically every conspiracy trial that would not be subject to dismissal for lack of sufficient evidence for conviction. In those few cases where there is sufficient evidence to go to the jury on the issue of guilt but insufficient evidence for admissibility of the coconspirator's statement,[14] some mistrials may be avoided by limiting instructions. In most of these cases, I submit, the statement would be admissible for reasons apart from its truth. See note 5 *supra.* Only in the very infrequent case, therefore, where the coconspirator statement is not admissible for *any* purpose and a cautionary instruction cannot remove the prejudice engendered by its admission would a mistrial be required.

In sum, perhaps the steps the majority has taken today in laying down a set of rules to control the Government's use of coconspirator statements, *ante* at 583, are in reality motivated by a concern that criminal cases meriting mistrial because of the erroneous reception of coconspirator declarations will nevertheless result in convictions. This concern may be amplified by the majority's frustration at the inability of an appellate tribunal to retry such cases and to remedy the perceived injustice; we are left with but a cold record from which to determine whether the statement was sufficiently prejudicial to require reversal. We are required to defer to the district judge in all but the most egregious circumstances. But we are thus limited in every appeal based on the erroneous admission of evidence. Rather than adopt the far reaching measures fashioned by the majority especially for criminal trials (but clearly applicable in all cases involving concerted activity), I would rely upon our district judges to make proper and careful application of the rules of evidence and procedure, to the end that justice may be achieved.

---

14. This situation would occur when the evidence is such that it would support a conviction when viewed in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), but does not preponderate in favor of the existence of a conspiracy when its quality is taken into account. It will also occur when, although the evidence preponderates in favor of a conspiracy, it does not weigh in favor of each of the remaining prerequisites to admissibility, i. e., that the statement was made by a coconspirator during and in furtherance of the conspiracy.