UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesus Martin LOPEZ,
Defendant-Appellant.

No. 84–3254.

United States Court of Appeals,
Eleventh Circuit.

April 29, 1985.

H. Jay Stevens, Federal Public Defender, Orlando, Fla., for defendant-appellant.

Paul J. Moriarty, Asst. U.S. Atty., Orlando, Fla., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Jesus Martin Lopez appeals his conviction for conspiracy to distribute and to possess with intent to distribute cocaine hydrochloride, for possession of cocaine hydrochloride with intent to distribute, and for distribution of cocaine. He asserts that the district court erred in finding sufficient independent evidence of Lopez' involvement with the conspiracy to support the admission into evidence of co-conspirators' statements under *United States v. James*, 590 F.2d 575 (5th Cir.1979) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). In addition, Lopez claims error in the admission of fingerprint evidence, the denial of defendant's motion for acquittal, and the failure to instruct the jury at the close of the case on defendant's right not to testify and on the meaning of "knowing" and "willful". We disagree and affirm.

Lopez and three co-defendants were arrested as the result of an undercover drug investigation conducted by the Drug Enforcement Administration (DEA) involving the use of a confidential informant, "Mr. Dardo". During the course of the investigation, Mr. Dardo engaged in several recorded telephone conversations and meetings with co-defendants Jairo and Sylvia Restreppo in which Jairo Restreppo's brother-in-law, defendant Martin-Lopez, was implicated as the source of cocaine obtained during undercover purchases. In these conversations Jairo and Sylvia Restreppo do not specifically refer to defendant Lopez but instead mention "my brother-in-law" or "Martin". In addition, DEA Agent Behan testified to co-defendant Jairo Restreppo's comment at a meeting at which Behan, another DEA agent, and Mr. Dardo received a cocaine sample from Jairo Restreppo. In reference to the ultimate bulk delivery, Restreppo said "he was getting it from Miami, that his brother-in-law would go down and pick it up and drive it to wherever the delivery point happened to be." Lopez contends that these statements were improperly admitted under the co-conspirator exception to the hearsay rule, Fed. R.Evid. 801(d)(2)(E).

Mr. Dardo also testified to a transcript of a telephone conversation between Mr. Dardo, Jairo Restreppo and an individual who identified himself as "Martin, man, his brother-in-law" and who stated "we need to speak to you urgently." Mr. Dardo failed to make an in-court identification of defendant Martin Lopez as the "Mr. Lopez" with whom he met or as the voice in the phone conversation. Lopez argues that in the absence of an in-court identification connecting the telephone voice, the "Mr. Lopez" present at the meeting and the defendant Martin Lopez, these statements

are also co-conspirator statements improperly admitted under *James.*

In addition to testimony concerning telephone conversations and meetings with the defendants, the government introduced testimony comparing Lopez' fingerprints with fingerprints found on a plastic "Canon" shopping bag containing cocaine. DEA Agent Collins testified that he received the cocaine at Jairo Restreppo's sister's house. Mr. Dardo identified in court Jairo Restreppo's sister as Blanca Lopez, defendant Lopez' wife. Mr. Dardo stated that Blanca Lopez took a plastic "Canon" bag containing a kilo-and-a-half of cocaine from a kitchen closet, placed the plastic bag in a paper bag and put onions on top of the bag. The Government introduced the plastic bag containing cocaine into evidence at trial. The court permitted a latent fingerprint examiner to testify to her conclusion that latent fingerprints and palm prints detected on the bag were the same as the fingerprints appearing on a fingerprint card bearing the name of "Martin-Lopez". Defendant Lopez objected to the Government's offer of the fingerprint card on the ground that the Government failed to establish the origin of the fingerprint card and to connect the fingerprints on the card with the defendant. The expert had not taken defendant's fingerprints herself and could only associate the prints with the name printed on the card. Government counsel advised the court that the prints on the card had been taken pursuant to court order by an F.B.I. agent in the building and offered to have the defendant fingerprinted in court if necessary. The court determined that the "document speaks for itself" and permitted introduction of the card and the expert's testimony.

The Government also presented testimony placing Lopez at a meeting for payment between DEA agents, Dardo, Restreppo and Martin-Lopez. The meeting was arranged by Sylvia Restreppo and Dardo. Dardo testified that she stated in a telephone conversation that she would notify her brother-in-law and asked Mr. Dardo to bring the payment for the cocaine. Undercover Agent Behan identified defendant Martin-Lopez as the man accompanying Jairo Restreppo at the payment meeting and testified that Lopez identified himself to Behan at the meeting. DEA Agent Collins testified that Jairo Restreppo identified Martin-Lopez to Collins as Restreppo's brother-in-law. Restreppo and Martin-Lopez were arrested at the payment meeting.

At trial, at the close of the Government's case, defendant requested a *James* determination that the evidence independent of the co-conspirator statements was insufficient to establish the existence of a conspiracy or that defendant participated in the conspiracy. For the purpose of the appeal Lopez admits the existence of the conspiracy and confines his arguments to the lack of evidence establishing his involvement with the conspiracy. The court found that there was ample independent prima facie evidence. Defendant then moved for judgment of acquittal on the ground that there was insufficient evidence to sustain a jury verdict. The court denied the motion. Defendant Lopez did not testify. At the close of all the evidence the court again denied Lopez' motion for judgment of acquittal and the granting of the *James* motion.

Lopez argued that under *James* the Government had the burden of establishing the conspiracy and Lopez' participation by a preponderance of the evidence. He argued that the evidence, independent of the co-conspirator statements and the fingerprints, amounted to mere presence at a meeting arranged for payment. The court determined that there was a preponderance of independent evidence to connect Lopez to the conspiracy and thus found the co-conspirator statements admissible and denied the motion for acquittal.

The Government argues that the co-conspirator statements are admissible under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E). In *James* the former Fifth Circuit interpreted Rule 801 to require that

> on appropriate motion at the conclusion of all the evidence the court must determine as a factual matter whether the

prosecution has shown by a preponderance of the evidence *independent of the statement itself* (1) that a conspiracy existed, (2) that the co-conspirator and the defendant against whom the statement is offered were members of the conspiracy, and (3) that the statement was made in furtherance of the conspiracy.

590 F.2d at 582 (emphasis added).

 The trial court specifically concluded that the evidence met the preponderance of evidence test. The trial court's findings under *James*, as a factual matter, includes both a quantitative and qualitative evaluation of the evidence which will not be overturned unless clearly erroneous. *United States v. Perry*, 624 F.2d 29, 30 (5th Cir.1980), accord *United States v. Bulman*, 667 F.2d 1374, 1379 (11th Cir. 1982) *cert. denied* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982). We find that the evidence, independent of the co-conspirator statements, is sufficient to support the trial court's *James* determination.

First, there are statements made in a telephone conversation with Dardo by Martin, "man, his brother-in-law" indicating a need to speak with Dardo. Shortly after that conversation, Dardo met with Restreppo and "Mr. Lopez". Mr. Lopez handed Dardo the cocaine, discussed profit and demanded $2,000 for the cost of transporting the cocaine. Although Mr. Dardo failed to make an in-court identification of defendant Lopez connecting the telephone voice, the man at the meeting and defendant, Agent Behan later made an in-court identification. Behan testified that defendant was introduced by Restreppo as his brother-in-law Martin. In addition, Agent Collins identified defendant in court as the man accompanying Restreppo to the payment meeting. The later testimony of Collins and Behan provide sufficient circumstantial evidence that the voice in the telephone conversation was that of defendant. "Courtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who made the statements in question. *United States v. Fern*, 696 F.2d 1269, 1276 (11th Cir.1983) (citing *Delegal v. United States*, 329 F.2d 494 (5th Cir.1964), *cert. denied*, 379 U.S. 821, 85 S.Ct. 44, 13 L.Ed.2d 32 (1964).

 There is sufficient circumstantial evidence to attribute the statements to defendant. "A defendant's own statements are admissible against him as party admissions under Fed.R.Evid. 801(d)(2)(A)." *United States v. Zielie*, 734 F.2d 1447, 1457 (11th Cir.1984) (citing *United States v. Hewitt*, 663 F.2d 1381, 1388 (11th Cir.1981)) *reh'g denied*, 740 F.3d 979 (1984). Thus, the defendant Lopez' own statements constitute independent evidence for the purpose of applying the James standard.

 Second, there was expert testimony that the defendant's palm and fingerprints were detected on the "Canon" shopping bag in which Mr. Dardo received the cocaine. Defendant argues that the fingerprint card and expert testimony linking the prints on the card to Lopez were improperly admitted hearsay. "Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion." *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983) (citing *United States v. Gorel*, 622 F.2d 100, 105 (5th Cir.1979)), *reh'g denied*, 708 F.2d 734 (1983). Defendant seems to argue that the fingerprint evidence is inadmissible for lack of authentication. Federal Rule of Evidence 901 provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what proponent claims." Lopez contends that the evidence is inadmissible because the Government failed to offer any evidence identifying the source of the fingerprints on the fingerprint card. "It is clear that connection of physical evidence with a defendant may be shown by circumstantial evidence." *United States v. Soto*, 591 F.2d 1091, 1099 (5th Cir.1979) *cert. denied*, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979). There is ample circumstantial evidence to infer that

the fingerprints on the card marked "Martin-Lopez" are those of the defendant. Government counsel proffered sufficient information to the court to place the admission of the card within the broad discretion of the court. The trial court's determination of admissibility of evidence will not be disturbed absent a clear abuse of discretion. *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983). Government counsel advised the court that the fingerprints of defendant had been obtained pursuant to court order by an F.B.I. agent in the building. The expert testified that the prints on the card matched those on the plastic shopping bag. Thus there is sufficient circumstantial evidence from which to infer that the print card was the result of the fingerprinting by the F.B.I. agent. Defendant's argument is in substance a challenge to the chain of custody of the print card. Challenge to the chain of custody goes to the weight rather than the admissibility of the evidence. *United States v. Henderson,* 588 F.2d 157, 160 (5th Cir. 1979), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979); *United States v. Clark,* 664 F.2d 1174, 1176 (11th Cir. 1981). Thus, the adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of the evidence.

■ Lopez also challenges the sufficiency of the evidence to support his convictions. A conviction must be affirmed if, when viewing the evidence in the light most favorable to the Government, a reasonable trier of fact could find that the evidence has established guilt beyond a reasonable doubt. See *Glasser v. United States,* 315 U.S. 60, 62, 62 S.Ct. 457, 461, 86 L.Ed. 680 (1942); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc). Viewing the evidence, and the inferences which may be drawn from the evidence, in this case in the light most favorable to the Government, we conclude that it was sufficient to support the convictions.

■ Finally, Lopez challenges the instructions to the jury. Lopez requested that the court instruct the jury on the meaning of "knowingly" and "willfully". The court refused the instructions and in addition refused to repeat the instruction given immediately after impanelment that the no-adverse inference should be drawn from defendant's failure to testify. The trial court did not abuse its discretion in refusing the instructions. A trial judge has broad discretion formulating instructions so long as the charge accurately reflects the law and facts. *See,* e.g., *United States v. Walker,* 720 F.2d 1527, 1541 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). The trial court's closing instructions incorporated the elements of "willfully" and "knowingly" in the explanation of the charged offense. The refusal to give a requested instruction warrants reversal only if (1) the instruction was substantially correct, (2) the requested instruction is not addressed in the charge actually given, and (3) the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense. *See,* e.g., *United States v. Walker,* 720 F.2d at 1541, *United States v. Grissom,* 645 F.2d 461, 464 (5th Cir.1981). The trial court's instructions provided sufficient instruction to the jury on the meaning of "knowingly" and "willfully" to meet this standard.

■ We also find no reversible error in the failure to instruct the jury at the end of the trial on the defendant's right not to testify. The court properly advised the jury on this right at the beginning of the trial, after impanelling the jury. While it would have been advisable to repeat the instruction at the end of trial, the court's instructions were sufficient to preclude reversible error. The court instructed in closing:

> The indictment or formal charge against the defendant is not evidence of guilt. Indeed, each defendant is presumed by the law to be innocent. The law does not require a defendant to prove his innocence or produce any evidence at all. The Government has the burden of proving him guilty beyond a reasonable

doubt. And if it fails to do so, you must acquit.

This case is distinguishable from *United States v. Dilg*, 700 F.2d 620 (11th Cir.1983) relied on by Lopez. In Dilg, the court found that the judge's instruction as to the presumption of innocence given *prior* to the jury being selected and sworn and not repeated in its final charge violated Federal Rules of Criminal Procedure 30. *Id.* at 626, n. 10. In this case the trial court instructed the jury that the defendant had a right not to testify *after* it was impaneled and reminded the jury of the presumption of innocence and the Government's burden at the end of trial. See *United States v. Davila-Nater*, 474 F.2d 270 (5th Cir.1973) *reh'g denied*, 474 F.2d 1348 (1973). In *United States v. Patterson*, 648 F.2d 625 (9th Cir.1981), the court held that the trial court's instruction on the defendant's right to remain silent, given during the impanelling process but not repeated in its final charge constituted reversible error. In our view, having given the right-to-remain-silent instruction after the impanelling of the jury, it was not error not to repeat it in the court's final charge.

AFFIRMED.