[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15734
Non-Argument Calendar

_____

D. C. Docket No. 03-00436-CR-P-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EARNEST W. SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 29, 2005)

Before TJOFLAT, DUBINA and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellant Earnest W. Smith was convicted of bank robbery, in violation of 18 U.S.C. § 2113(a). This appeal raises two issues: (1) whether the district court abused its discretion by admitting as evidence a fingerprint card; and (2) whether the district court properly calculated Smith's sentence including a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F) on the basis that the crime involved a threat of death. For the reasons that follow, we affirm.

**I.**

The relevant facts for the purposes of this appeal are as follows. Jennifer Ballew, a teller at Farmers and Merchants Bank in Oxford, Alabama, testified at trial that two men entered the bank, went to the island where the deposit slips were kept, and wrote something down. One of the men then approached her booth and handed her a note which read: "I want all the cash, bitch or I'll kill all; you say, you die." She gave him $1,840 from her cash drawer and activated the alarm as the two men left the bank.

Naveon Taylor also testified, admitting he was one of the robbers and identifying Appellant Smith as the second robber. According to Taylor, he and Smith lived together at the time of the robbery and they worked out a plan to rob the bank because they needed money for drugs. Taylor testified that Smith wrote the demand note before the robbery at the home of Smith's girlfriend. Taylor

2

further explained that when inside the bank, he and Smith pretended to write something on a piece of paper to enable them to see what was going on in the bank. Taylor testified that he handed the demand note to the teller and took the money. He and Smith then left the bank in a car driven by Smith's girlfriend, with Smith riding in the front passenger seat.[1]

The government sought to introduce a fingerprint card that contained Smith's signature, social security number, and date of birth, through the testimony of Brian Clay, the officer who took the prints, and FBI agent Brian Tallent. Although Clay was unable to identify the defendant as the person whom he fingerprinted, he stated that, at the time of the arrest, he arranged for a fingerprint card to be taken  and that he entered certain information on the card, including Smith's name, social security number and date of birth.  He also testified that the card was signed Earnest Smith.  FBI agent Brian Tallent testified that he interviewed Smith at the police station on the same day the fingerprint card was made.  According to Tallent, during the interview, Smith gave him his name and social security number, which matched the information on the fingerprint card.[2]

---

[1] There was evidence that Smith's girlfriend got the car from a nearby car dealership by asking the dealership to allow her to take the car on a test drive.

[2] FBI agent Phyllis Garcia also testified that she compared prints lifted from the front passenger side of the car to those on the fingerprint card and the prints matched.

Defense counsel objected to the admission of the fingerprint card on the basis that Tallent had no personal knowledge that the prints on the card belonged to Smith. The district court overruled the objection. At the conclusion of the trial, Smith was convicted.

Following the trial, the probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 20 under U.S.S.G. § 2B3.1, with a 2-level increase for property taken from a financial institution, U.S.S.G. § 2B3.1(b)(1), and another 2-level enhancement because the note handed to the teller presented a threat of death, U.S.S.G. § 2B3.1(b)(2)(F). At sentencing, Smith's counsel objected to the 2-level increase for the threat of death because Taylor, not Smith, handed the note to the teller. The court overruled the objection and noted that, based on the evidence at trial, the jury had concluded that Smith played a role in the death threat. With a total offense level of 24 and a criminal history category IV, Smith's guidelines range was 77 to 96 months imprisonment. The court sentenced Smith to 86 months imprisonment, 3 years supervised release, and restitution in the amount of $1,840. This appeal followed.

**II.**

Smith argues that the district court erred by admitting the fingerprint card

because there was insufficient evidence to lay a proper predicate.[3] We review a district court's ruling on the admissibility of evidence for abuse of discretion. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). "Evidentiary errors do not constitute grounds for reversal unless there is a reasonable likelihood that they affected the defendant's substantial rights; where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." United States v. Drury, 396 F.3d 1303, 1315 (11th Cir. 2005).

Federal Rule of Evidence 901 provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901. The government may show the connection between the physical evidence and the defendant by circumstantial evidence. United States v. Lopez, 758 F.2d 1517, 1520 (11th Cir. 1985).

Here, the district court did not abuse its discretion, as the government proffered sufficient circumstantial evidence for the jury to conclude that the

---

[3] There is no merit to Smith's argument that the introduction of the fingerprint card violated his confrontation clause rights under the Sixth Amendment. Smith had an opportunity to cross-examine both Clay and Tallent. Additionally, to the extent that Smith challenges the chain of custody, that argument has no merit, as such a challenge goes to the weight of the evidence and not its admissibility. United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985).

5

fingerprints on the card belonged to Smith. Clay testified that he took the

fingerprints on the day of Smith's arrest and that Smith's signature, social security

number, and other identifying information were recorded on the card. In addition,

Smith gave Tallent his social security number during an interview on the same day

the fingerprints were taken and that number matches the number on the fingerprint

card. Viewed together, the testimony of these two witnesses provided a sufficient

foundation for the admission of the fingerprint card. See Lopez, 758 F.2d at 1520-

21.

Smith also argues that the two-level enhancement of his sentence pursuant to

U.S.S.G. § 2B3.1(b)(2)(F)[4] that was imposed on the basis that the robbery involved

a threat of death violates his constitutional rights in light of

Blakely v. Washington 542 U.S. 296 (2004). In particular, Smith argues that the

enhancement was improper because Taylor, not Smith, presented the note to the

teller.

Smith did not preserve his Blakely (now United States v. Booker, 543 U.S.

---

[4] Under U.S.S.G. § 2B3.1(b)(2)(F), the offense level is increased by two if a threat of death was made. A threat of death could be oral or in writing. U.S.S.G. § 2B3.1, comment. (n.6). After United States v. Booker, 543 U.S. –, 125 S.Ct. 738 (2005), we apply the same standards of review to guidelines applications. See United States v. Crawford, 407 F.3d 1174 (11th Cir. 2005). Additionally, after Booker, the same extra-verdict enhancements remain, and the district court considers the same factual evidence in applying the guidelines enhancements as it would under the mandatory guidelines scheme. United States v. Williams, 408 F.3d 745 (11th Cir. 2005).

–, 125 S.Ct. 738 (2005)) argument. In the district court, Smith did not cite to any caselaw in objecting to the enhancement nor did he contend that the issue should have been submitted to the jury. Instead, Smith merely objected on the basis that Taylor, not Smith, handed the demand note to the teller; this is insufficient to preserve a <u>Booker</u> claim. <u>See</u> <u>United States v. Dowling</u>, 403 F.3d 1242 (11th Cir. 2005) (holding that, to preserve a constitutional objection, the defendant must refer to the Sixth Amendment, the <u>Apprendi/Blakely/Booker</u> line of cases, or the right to have a jury decide a disputed fact, but that a challenge to the sufficiency of the evidence does not preserve the error).

Because Smith did not preserve his <u>Booker</u> claim, we review for plain error. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1298 (11th Cir. 2005), <u>cert. denied</u>, – S.Ct. – (No. 04-1148) (June 20, 2005). To establish plain error, Smith must show there is: (1) error ; (2) that is plain; (3) that affects the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. <u>Rodriguez</u>, 398 F.3d at 1298.

Here, the district court imposed a 2-level extra-verdict enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F). Therefore, Smith's <u>Booker</u> challenge presents an error that is plain. <u>See</u> <u>Rodriguez</u>, 398 F.3d at 1298-99. The third

7

prong of the plain error test, however, places a high burden on a defendant; Smith must show that his sentence would have been different but for the mandatory application of the guidelines. Id. at 1299-1301.

Smith has not met this burden. Although Smith did not object to the enhancement on Booker grounds, the district court indicated that the jury had found that Smith played a role in the use of the demand letter. Thus, the district court determined that the extra-verdict enhancement had been decided by the jury. Id. at 1301. Moreover, if faced with the same information on remand, the court would still consider the same guideline and the same facts. See United States v. Williams, 408 F.3d 745 (11th Cir. 2005). There is no indication that the district court would have sentenced Smith differently if it had it known the guidelines were only advisory. Thus, Smith cannot meet the third prong of the plain error test.[5] United States v. Shelton, 400 F.3d 1325, 1330-32 (11th Cir. 2005); Rodriguez, 398 F.3d at 1301.

Accordingly, for the foregoing reasons, we affirm.

---

[5] Because Smith cannot show that his sentence would have been different but for the mandatory application of the guidelines, any claim of statutory error fails as well. See United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005); Rodriguez, 398 F.3d at 1301. See also United States v. Williams, 408 F.3d 745 (11th Cir. 2005) (stating that Williams could not show his sentence would have been different where his sentence fell at the high end of the guideline range); United States v. Curtis, 400 F.3d 1334 (11th Cir. 2005) (noting that there was nothing in the record to suggest the district court would have imposed a lower sentence under an advisory guidelines system, especially in light of the fact that the court already had sentenced him at the top of the guideline range).

8

**AFFIRMED.**