[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10378
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80200-KLR-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE ABEL FLORES-VELASQUEZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 2, 2016)

Before WILSON, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jose Abel Flores-Velasquez appeals his conviction for illegal reentry after deportation in violation of 8 U.S.C. § 1326(a) and (b)(2), as well as his 71-month sentence.  After careful review, we affirm.[1]

I.

Flores-Velasquez was arrested in Palm Beach County, Florida in June 2013.  After his arrest, law enforcement discovered that he had been deported from the United States in 2007 and had subsequently re-entered the country illegally.  Flores-Velasquez was indicted on a single count of illegal re-entry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(2).  After a one-day jury trial, Flores-Velasquez was found guilty of that offense.  The district court sentenced Flores-Velasquez to 71 months' imprisonment.  He filed a timely notice of appeal.

II.

A.

The first issue Flores-Velasquez raises is whether the district court improperly denied his motions requesting a second competency evaluation.  We review the district court's denial of a motion for a competency evaluation for abuse of discretion.  *See United States v. Nickels*, 324 F.3d 1250, 1251 (11th Cir. 2003).  We discern no abuse of discretion here because the district court had adequate information to make its determination.

---

[1] Because we write only for the parties, we set out only those facts necessary to explain our decision.

In November 2013, the district court granted Flores-Velasquez's unopposed motion for a competency evaluation. The Bureau of Prisons conducted a competency examination and circulated to the parties and the district court a competency report, which found Flores-Velasquez competent to stand trial. At a competency hearing in March 2014, Flores-Velasquez stipulated to his competency. At the same hearing, Flores-Velasquez requested and was assigned a new attorney.

In October 2014, less than three weeks before trial, Flores-Velasquez's counsel filed a motion seeking a second competency evaluation. The attorney asserted that based on his observations, Flores-Velasquez's mental state had "significantly degenerated," and he opined that Flores-Velasquez was unfit to proceed to trial. Def.'s Mot. for Second Competency Evaluation at 1 (Doc. No. 40).[2] The district court denied the motion. Flores-Velasquez renewed his request for a new competency evaluation at the start of trial, and the district court denied his request. At the sentencing hearing, Flores-Velasquez's counsel again requested a competency evaluation; his request again was denied.

A criminal defendant may "file a motion for a hearing to determine the mental competency of the defendant" any time after the commencement of prosecution and prior to sentencing. 18 U.S.C. § 4241(a). A district court must

---

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

grant the motion for a hearing when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* The district court has discretion to order "a psychiatric or psychological examination of the defendant be conducted" prior to the hearing. *Id.* § 4241(b). A district court may rule on a § 4241 motion "without benefit of a full dress hearing so long as the court has no bona fide doubt as to the competence of the defendant." *Nickels*, 324 F.3d at 1252. (internal quotation marks omitted).

Because a criminal defendant must be competent at all stages of a trial, competency is an ongoing inquiry. *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005). In determining whether further inquiry into the defendant's competency is required, evidence of irrational behavior, the defendant's demeanor at trial, and prior medical opinions on competency are all relevant; however, there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). "[A] lawyer's representations concerning the competence of his client . . . is unquestionably a factor which should be considered" in deciding whether a defendant's competence requires examination, but a district court is not required to "accept without question" such representations. *Id.* at 177 n.13.

4

Here, after the Bureau of Prisons evaluated Flores-Velasquez and circulated a report finding him competent to stand trial, Flores-Velasquez stipulated to his competency.  We acknowledge that because competency is an ongoing inquiry, neither the evaluation nor the stipulation dispositively establishes that Flores-Velasquez was competent at the time of trial or sentencing.  *See Rahim,* 431 F.3d at 759.  Although Flores-Velasquez contends that his mental state had deteriorated after the initial evaluation and his stipulation, we conclude the evidence was insufficient to create a bona fide dispute.

When the district court denied Flores-Velasquez's first request for a second competency evaluation, the only evidence that Flores-Velasquez's mental state had deteriorated since the evaluation and stipulation was his counsel's representation.  On this record, we cannot say that the district court abused its discretion when it denied a second evaluation.  *See Drope*, 420 U.S. at 178 n.13.[3]  The district court denied Flores-Velasquez's subsequent requests for a new competency evaluation after observing and interacting with Flores-Velasquez during trial.  Flores-Velasquez asserts that his behavior during voir dire, hanging his head below the table and refusing to make eye contact with jurors, corroborates his counsel's observations about his mental state.  Although he frequently refused to cooperate

---

[3] To be clear, we are not saying that the district court would have abused its discretion if it had granted a second competency evaluation based on Flores-Velasquez's counsel's representation.

5

with counsel, the record shows that Flores-Velasquez was able to speak and cooperate with counsel when he chose to do so during trial. Nothing in the record suggests that he actually lacked the ability to assist counsel or to understand the proceedings. Given our deferential standard of review, we cannot say that the district court abused its discretion when it denied a second competency evaluation as Flores-Velasquez failed to establish that there was bona fide doubt as to his competency. Accordingly, we affirm as to this issue.

B.

Flores-Velasquez also asserts that the district court cumulatively erred by improperly admitting evidence and improperly instructing the jury. The cumulative error doctrine provides for reversal when "an aggregation of non-reversible errors . . . yield[s] a denial of the constitutional right to a fair trial." *United States v. Capers*, 708 F.3d 1286, 1299 (11th Cir. 2013). "The harmlessness of cumulative error is determined by conducting the same inquiry as for individual error—courts look to see whether the defendant's substantial rights were affected." *Id*. (quotation omitted). The total effect of the errors on the trial may depend "on the nature and number of the errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose . . . ; the strength of the government's case against the defendant; and the length of the trial." *United States v. Flanders*, 752 F.3d 1317, 1334 (11th Cir. 2014). When

6

there is no error in any of the district court's rulings, reversal under the cumulative error doctrine is inappropriate. *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005).

1.

Flores-Velasquez argues that the district court abused its discretion when it admitted exhibits from the government's Alien Registration File ("A-file") for Flores-Velasquez that he contends contained hearsay and were not properly authenticated. We review the district court's evidentiary rulings for abuse of discretion. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). We discern no abuse of discretion.

At trial, a Department of Homeland Security records custodian testified about Flores-Velasquez's A-file, which was the government's official immigration record for Flores-Velasquez. She explained that Flores-Velasquez's A-file included, among other things, a copy of his passport, his birth certificate, a biographical form, an application for employment authorization, a warrant for removal, and a warning to alien ordered removed. The district court admitted each of these documents into evidence. On appeal, Flores-Velasquez never identifies the specific evidence that he contends was erroneously admitted. But his citations to the record indicate that he is challenging only the district court's decision to

admit into evidence his biographical form, application for employment authorization, warrant for removal, and warning to alien removed.[4]

Hearsay is a statement, other than one made by the declarant while testifying at the current trial or hearing, offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is generally not admissible into evidence. Fed. R. Evid. 802. Public records, however, are admissible under an exception to the hearsay rule. Fed. R. Evid. 803(8). Under the public records exception, "routinely and mechanically kept [immigration] records, such as . . . warrants of deportation" that are maintained in the A-file may be admitted into evidence. *United States v. Agustino-Hernandez*, 14 F.3d 42, 43 (11th Cir. 1994); *see Caraballo*, 595 F.3d at 1226 ("[I]mmigration files contained in an A-File . . . constitute admissible hearsay . . . .")

Authenticity is a prerequisite of admissibility. Under the Federal Rules of Evidence, the party introducing evidence must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Documents may be authenticated by showing that they are "a purported

---

[4] In his brief, Flores-Velasquez never argues that the district court erred in admitting into evidence his birth certificate or passport. Accordingly, he has abandoned any argument regarding the admission of these documents. *Sappopo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). But even if Flores-Velasquez had challenged the district court's decision to admit the birth certificate and passport into evidence, we do not think the district court abused its discretion in admitting those documents.

public record or statement . . . from the office where items of this kind are kept."
Fed. R. Evid. 901(b)(7).

Flores-Velasquez's application for employment authorization, warrant of removal, and warning to the alien ordered removed are admissible under the public records hearsay exception. *See Caraballo*, 595 F.3d at 1226; *see also* Fed. R. Evid. 803(8).[5] The government properly authenticated these exhibits by presenting testimony from a records custodian establishing these documents came from Flores-Velasquez's A-file, which was the official government record. *See* Fed. R. Evid. 901(b)(7).

### 2.

Flores-Velasquez contends that the district court also erred because at the conclusion of trial, the district court failed to instruct the jury about Flores-Velasquez's right not to testify. Because Flores-Velasquez failed to object to the instructions before the jury retired to deliberate, we review the jury charge for plain error.[6] *United States v. Gutierrez*, 745 F.3d 463, 471 (11th Cir. 2014); *see*

---

[5] In addition, the statements Flores-Velasquez made in his biographical form and application for employment authorization cannot be hearsay because they are admissions of a party. *See* Fed. R. Evid. 801(d)(2)(A).

[6] "To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

9

*United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012).  We see no plain error here.[7]

In its preliminary instructions, the district court informed the jury about Flores-Velasquez's right not to testify, stating:  "[t]he Defendant has no burden to prove his innocence or present any evidence or to testify.  Since the Defendant has the right to remain silent and may choose whether to testify, you cannot legally put any weight on a Defendant's choice not to testify.  It is not evidence."  Trial Transcript at 61 (Doc. 73).  Although the district court should have repeated this instruction at the end of the trial, under our precedent "the court's instructions were sufficient to preclude reversible error."  *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985).  Because Flores-Velasquez has failed to make a sufficient showing that the district court erred with respect to its evidentiary rulings or jury instructions, we hold there is no cumulative error here.  *See Taylor*, 417 F.3d at 1182.

---

[7] Flores-Velasquez also asserts that the district court improperly instructed the jury by failing to provide an instruction that Flores-Velasquez had to violate the law "knowingly" and by failing to define the term "voluntary."  Because Flores-Velasquez neither objected to nor proposed an alternative to the district court's instruction, we review for plain error.  *See Gutierrez*, 745 F.3d at 471.  For the reasons set forth in Section II-C below, we conclude that the district court properly omitted any instruction that the government had to prove Flores-Velasquez acted with a specific intent.  And the district court was not required to provide a further definition of "voluntary" because "[i]t is well settled that a court need not define terms that are not unduly technical or ambiguous or that are within the common understanding of the jury."  *United States v. Pepe*, 747 F.2d 632, 674 n.78 (11th Cir. 1984).

C.

Flores-Velasquez argues the evidence was insufficient to support his conviction because the government failed to present any evidence regarding the voluntariness of his presence in the United States. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Chastain*, 198 F.3d 1338, 1351 (11th Cir. 1999). We must uphold the conviction "unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *Id*. The evidence here was sufficient to support Flores-Velasquez's conviction.

To support a conviction for illegal re-entry, the government must prove that the defendant is: (1) an alien; (2) who was previously deported; (3) was thereafter found in the United States; and (4) did not have permission to reenter. 8 U.S.C. § 1326(a); *United States v. Henry*, 111 F.3d 111, 113 (11th Cir. 1997). The government need not prove specific intent to reenter without express permission. *Henry*, 111 F.3d at 113. Instead, it is sufficient for the government to prove the defendant's general intent by showing that he took a voluntary act by reentering the country. *Id.*

Flores-Velasquez argues that evidence was insufficient because the government introduced no evidence to show that he voluntarily reentered the United States. Flores-Velasquez asserts that the government never established

11

whether he was conscious or comatose when he returned to the United States. We reject Flores-Velasquez's argument. From the officer's testimony about the circumstances of Flores-Velasquez's arrest, including that it occurred in a residential area in Florida that was not a port, the jury could reasonably find that Flores-Velasquez was conscious and not comatose and took a voluntary act when he reentered the United States.

## D.

Finally, we consider Flores-Velasquez's challenges to the 71-month sentence imposed by the district court. Flores-Velasquez challenges the procedural reasonableness, substantive reasonableness, and constitutionality of his sentence. We find no error and affirm.

## 1.

Flores-Velasquez contends that the district court committed procedural error by failing to verify that he read and discussed the presentence investigation report ("PSI") with his attorney. Because Flores-Velasquez did not object to the procedural reasonableness at time of his sentencing, we review only for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014).

Federal Rule of Criminal Procedure 32(i)(1)(A) provides that at sentencing the district court "must verify that the defendant and the defendant's attorney have read and discussed the presentence report." Fed. R. Crim. P. 32(i)(1)(A).

Although applying an earlier version of Rule 32, we have previously explained that nothing in the rule "requires a sentencing court to pose specific questions" such as "whether defendant and counsel have read the report, whether they have discussed it, [or] whether there are any mistakes." *United States v. Aleman*, 832 F.2d 142, 144 n.6 (11th Cir. 1987).

Here, the district court asked Flores-Velasquez's attorney whether he had "reviewed the presentence report with [his] client," and the attorney responded, "I did." Hearing Tr. at 2 (Doc. 70). Given this colloquy, we see no error, let alone plain error.[8]

2.

Flores-Velasquez also challenges the substantive reasonableness of his sentence. For the first time on appeal, he argues that the district court erred by applying a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because his prior conviction for first degree assault in New York state court does not qualify as a crime of a violence.[9]

---

[8] Flores-Velasquez also argues for the first time on appeal that the district court procedurally erred by failing to elicit allocution at sentencing. Under Rule 32(i)(4)(A)(ii), the district court must permit the defendant "to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). But after reviewing the sentencing transcript, we see "no room for doubt" that the district court issued Flores-Velasquez "a personal invitation to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305 (1961). The district court asked Flores-Velasquez personally whether he wished to address the court, and he responded, "No, your honor." Hearing Tr. at 6 (Doc. 70).

[9] The government argues that Flores-Velasquez waived this argument by failing to present it adequately in his appellant's brief. We disagree.

13

Ordinarily, we review the reasonableness of a sentence for an abuse of discretion. *United States v. Docampo,* 573 F.3d 1091, 1096 (11th Cir. 2009). The government urges that we should apply a plain error standard because Flores-Velasquez failed to challenge the substantive reasonableness of his sentence in the district court. However, the government has not cited any case in which we applied the plain error standard to review the *substantive* reasonableness of a sentence challenged for the first time on appeal. But we need not resolve the appropriate standard of review in this case because, even assuming the less deferential abuse of discretion standard applies, Flores-Velasquez has failed to show that the district court abused its discretion.

The Sentencing Guidelines provide for a 16-level enhancement when the defendant was previously deported after "a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). A conviction is considered a crime of violence when it falls under an enumerated list of offenses or meets an elements-based definition. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). In this case, we are concerned only with the elements-based definition, which requires the prior conviction to have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* The Supreme Court has explained that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another." *Johnson v. United States*,

14

559 U.S. 133, 140 (2010).  We have previously held that "a conviction predicated on a *mens rea* of recklessness does not satisfy the 'use of physical force' requirement under § 2L1.2's definition of 'crime of violence.'"  *United States v. Palomino Garcia*, 606 F.3d 1317, 1336 (11th Cir. 2010).

Generally, we apply a "categorical approach" to determine if a prior crime is a crime of violence under § 2L1.2, meaning "we look only at the fact of conviction and the statutory definition of the prior offense."  *United States v. Romo-Villalobos*, 674 F.3d 1246, 1248 (11th Cir. 2012).  When a statute is "divisible," meaning it sets out one or more of the elements of the offense in the alternative and some of those elements would not qualify as a crime of violence, we apply the modified categorical approach and examine the facts underlying the conviction in order to determine the statutory basis for the conviction.  *Palomino Garcia*, 606 F.3d at 1336-37.  We may consider "any charging documents, the written plea agreement, the transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  *Id.* at 1337; *see Shepard v. United States*, 544 U.S. 13, 16 (2005).  We may also consider "undisputed statements in the PSI."  *United States v. McCloud*, 818 F.3d 591, 596 (11th Cir. 2016); *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006).

15

With this framework in mind, we now consider whether a conviction for assault in the first degree under New York law qualifies as a crime of violence. Under New York law, a person is guilty of assault in the first degree when:

> 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or
>
> 2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or
>
> 3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person; or
>
> 4. In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants.

N.Y. Penal Law § 120.10.  The offenses listed in paragraphs 1 and 2 qualify as crimes of violence because they require the application of "force capable of causing physical pain or injury to another." *Johnson*, 559 U.S. at 140.  But we cannot say that the offense in paragraph 3 qualifies as a crime of violence.  This offense requires a mental state of recklessness, which is an insufficient *mens rea* to meet the use of force requirement.  *See Palomino Garcia*, 606 F.3d at 1336.[10]

---

[10] For purposes of this appeal, we need not address whether the offense set forth in paragraph four constitutes a crime of violence.

16

Because the statute is divisible, in that it sets forth the elements of the offense in the alternative, *see* N.Y. Penal Law § 120.10, we must apply the modified categorical approach to determine whether Flores-Velasquez's offense qualifies as a crime of violence. The unobjected-to PSI shows that Flores-Velasquez "intentionally stabbed his estranged wife in the stomach with a large kitchen knife, which resulted in the evisceration of her intestines." PSI ¶ 21. Because Flores-Velasquez failed to object to this fact despite having several opportunities to do so, he is deemed to have admitted it. *See Bennett*, 472 F.3d at 833-34. Accordingly, Flores-Velasquez's conviction qualifies as a crime of violence and the district court did not abuse its discretion in applying an eight-level enhancement under § 2L1.2.

3.

Flores-Velasquez also challenges the constitutionality of his sentence, arguing that the sentence was imposed in violation of his Fifth and Sixth Amendment rights because the statutory maximum was increased based on a prior conviction that was neither alleged in the indictment nor found by the jury at trial. Although we ordinarily review constitutional sentencing issues *de novo*, here we review for plain error because Flores-Velasquez raises this constitutional objection for the first time on appeal. *See United States v. King*, 751 F.3d 1268, 1280 (11th Cir. 2014).

17

Ordinarily, an alien found in the United States illegally after previously having been deported is subject to a maximum of two years' imprisonment. 8 U.S.C. § 1326(a). But when the defendant's removal occurred after an aggravated felony conviction, the maximum increases to twenty years. *Id.* § 1326(b)(2). The Supreme Court has held that a prior conviction "relevant only to the sentencing of an offender found guilty of the charged crime" is not a fact that must be charged in the indictment or found by a jury beyond a reasonable doubt. *Almendarez-Torres v. United States*, 523 U.S. 224, 226-28 (1998). Flores-Velasquez argues that *Almendarez-Torres* no longer is good law after a recent Supreme Court decision recognizing that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2155 (2013). But in *Alleyne* the Supreme Court expressly preserved the "narrow exception to this general rule for the fact of a prior conviction" recognized in *Almendarez-Torres* . *Id.* at 2160 n.1. As we have previously explained, we are "bound to follow *Almendarez-Torres* unless and until the Supreme Court itself overrules that decision." *United States v. Harris*, 741 F.3d 1245, 1250 (11th Cir. 2014) (internal quotation marks omitted). Applying that rule, Flores-Velasquez's challenge to his sentence fails. The district court committed no error, much less

18

plain error, when it sentenced Flores-Velasquez without a jury finding on his prior conviction.

## III.

For the reasons set forth above, we affirm Flores-Velasquez's conviction and sentence.

**AFFIRMED.**